## GEMMER ET AL. *v.* STATE, EX REL. STEPHENS.

[No. 20,374.   Filed June 22, 1904.]

CONSTITUTIONAL LAW.—*Officers.*—*Extension of Term.*—The act of 1903 (Acts 1903, p. 24) is invalid as being in conflict with §2, article 6, of the state Constitution providing that "there shall be elected, in each county, by the voters thereof, at the time of holding general elections, a clerk of the circuit court, auditor, recorder, treasurer, sheriff, coroner and surveyor. The clerk, auditor and recorder shall continue in office four years, and no person shall be eligible to the office of clerk, recorder or auditor more than eight years in any period of twelve years. The treasurer, sheriff, coroner and surveyor shall continue in office two years; and no person shall be eligible to the office of treasurer or sheriff more than four years in any period of six years," and with §14, article 2, of the Constitution providing that "all general elections shall be held on the first Tuesday after the first Monday in November," for the reason that such constitutional provisions are mandatory, and biennial elections must be held for the offices named, the act in question postponing the election as to some of such officers for two years. *pp. 160, 161.*

SAME.—The act of 1903 (Acts 1903, p. 24) is invalid for the reason that it expressly extends the term of office of treasurer in many counties beyond the constitutional limit of two years, and in this case continues the treasurer in office "more than four years in a period of six years." *p. 161.*

SAME.—The act of 1903 (Acts 1903, p. 24) is in violation of §3, article 15, of the Constitution, which provides that "whenever it is provided in this Constitution or in any law which may hereafter be passed, that any

officer, other than a member of the General Assembly, shall hold his office for any given term, the same shall be construed to mean that such officer shall hold his office for such term and until his successor shall have been elected and qualified," since such provision was intended to prevent vacancies in office, and can not be construed to authorize the legislature unnecessarily to postpone the election of a successor to such office. *p. 162.*

CONSTITUTIONAL LAW.—The act of 1903 (Acts 1903, p. 24) is invalid for the reason that it authorizes incumbents to hold who are ineligible by reason of the constitutional provision (article 2, §6,) that "no person shall be eligible to the office of treasurer or sheriff more than four years in any period of six," since such provision applies immediately upon the expiration of such period, unless in case of vacancy, death, removal, failure of successor to qualify or failure to elect, and can not apply where an election is unnecessarily postponed by the legislature. *p. 163.*

MANDAMUS.—*To Compel Name Certified to be Placed on Ballot.* — Where the county chairman of a party refuses in violation of §6215 Burns 1901, Acts 1889, p. 167, §18, to certify the name of a candidate, legally nominated by said party, to be placed upon the official ballot, he may be compelled by mandate to perform such duty. *pp. 164, 165.*

From Warren Circuit Court; *J. M. Rabb*, Judge.

Action by the State of Indiana, on relation of William H. Stephens, against Frederick L. Gemmer, as chairman, and Chester G. Rossiter, as secretary, of the Republican Central Committee of Warren county, for a writ of mandamus, directing them to certify his name to the board of election commissioners to be placed on the official ballot as the Republican candidate for treasurer of Warren county. From a judgment granting the writ, the defendants appeal. *Affirmed.*

*R. O. Hawkins, H. E. Smith, G. R. Hawkins* and *Merrill Moores*, for appellants.

*A. C. Harris, Ele Stansbury* and *H. D. Billings*, for appellee.

DOWLING, J.—This was a proceeding by the State, on the relation of the appellee Stephens, for a writ of mandate against the appellants, who were, respectively, the chairman and secretary of the Republican county committee of Warren county, to compel the appellants to certify the

name of the relator to the board of election commissioners of said county as the Republican candidate for county treasurer to be voted for at the general election in 1904. A demurrer to the alternative writ was overruled, the appellants refused to plead further, a peremptory writ was granted, and judgment was rendered against the appellants. Error is assigned upon the ruling on the demurrer.

The material facts recited in the alternative writ were as follows: That the relator had filed his verified complaint in said court showing that he was a citizen of the United States and of the State of Indiana; that he was fifty years of age, and had resided in Warren county all his life; that he was a member of the Republican party; that said party at the last general election in said county and State cast a majority of all the votes which were cast, and that said party had, and for many years, maintained a county organization in said county, consisting of a county committee, and a chairman and secretary duly chosen in the manner prescribed by law; that on January 9, 1904, said Republican county organization gave notice that on February 6, 1904, there would be held in the several voting precincts of said county a Republican voting convention for the purpose of nominating candidates for various offices to be voted for at the next general election to be held on the first Tuesday after the first Monday in November of said year; that, at said date, said convention was held agreeably to said notice, and for the purpose of making such nomination; that at the general election held in the year 1900 Peter W. Fleming, a duly qualified person, was elected to the office of county treasurer of said county for a period of two years; that he was commissioned and entered into said office January 1, 1902; that afterwards, in 1902, said Fleming was again elected to said office, and at the expiration of his said first term entered at once upon a second term under a commission duly issued to him, and is still in such office of county treasurer. That

on January 1, 1906, said Fleming will have served two full terms, to wit, four calendar years, continuously as the lawfully elected treasurer of said county, and that at the expiration of said period his eligibility to hold said office will cease, and said office will become vacant by virtue of article 6, §2, of the Constitution of this State; that at said voting convention held February 6, 1904, the persons participating therein proceeded to nominate a successor to the said Peter W. Fleming in said office of county treasurer, to be voted for at the general election to be held November 8, 1904, and that the relator received a majority of all the votes cast at all the voting precincts, and was duly nominated as the Republican candidate for treasurer of said county to succeed the said Fleming in said office, and to be voted for at said general election on November 8, 1904, and that after a canvass of all the votes cast at said convention he was declared to be the nominee thereof for said office; that Frederick L. Gemmer is the chairman of the Republican central committee of said Warren county, and that Chester G. Rossiter is the secretary of said committee; that said relator being such nominee for said office, he did, before bringing this suit, to wit, on March 12, 1904, in proper manner and form demand of the said chairman and secretary that they place the relator's name on the certificate of nomination made by said county convention, setting forth his said nomination, together with the other facts required to be stated in said certificate, so that relator's name could be printed on the ballot, and he could be voted for at the said next general election; that thereupon the said chairman and secretary, admitting that the relator was duly nominated as a candidate for said office of county treasurer by the Republican party of said county, refused to insert his name in the said certificate for the sole reason that by the act of the General Assembly of said State, approved February 11, 1903, it was provided in substance and effect that no successor to the said Fleming as county

treasurer of said county could or should be elected at the election of 1904, nor until the general election to be held in the year 1906; that the said act is unconstitutional and void; that unless the court will, by its mandate and judgment, compel the said chairman and secretary to insert the name of the relator in the said certificate, his name can not be presented to the electors of said county as a candidate for said office of treasurer to be voted for at said election, and that thereby he will be greatly injured; that he has no other remedy; that if his name is properly certified and printed on the ballots as aforesaid he will receive at said election a majority of all the votes to be cast for county treasurer of said county, and will thereby be entitled to have said office, and enter upon its duties immediately upon the expiration of the said second term of the said Peter W. Fleming. The alternative writ required the said chairman and secretary to insert the relator's name in the proper certificate as such nominee for the office of county treasurer, and to appear before the court on March 26, 1904, to show cause, if any they had, why the same should not be done. The ground of the demurrer was that the alternative writ did not state facts sufficient to constitute a cause of action.

The only question presented and argued by counsel is the constitutionality of the act of February 11, 1903 (Acts 1903, p. 24). Omitting the preamble, that act is as follows: "Section 1. That the terms of office of all judges of circuit, superior and criminal courts in this State, of all prosecuting attorneys and of all county auditors, county treasurers, clerks of the circuit court, county sheriffs, county recorders, county assessors, county coroners and county surveyors, hereafter elected in this State, shall begin on the 1st day of January next succeeding their election: Provided, that, in all cases where persons were elected to any of said offices at the general election in November, 1900, for a term of four years, whose term of office did not

begin until after January 1, 1901, and in all cases where persons were elected to any of said offices at the general election in November, 1902, for a term of two years, whose terms of office did not begin until after January 1, 1903, no successors to such officers shall be elected until the general election in the year 1906. In all cases where persons were elected to any of said offices at the general election in November, 1900, for a term of six years, whose terms of office did not begin until after January 1, 1901, and in all cases where persons were elected to any of said offices at the general election in November, 1902, for a term of four years, whose terms of office did not begin until after January 1, 1903, no successors to such officers shall be elected until the general election in the year 1908. In all cases where persons were elected to any of said offices at the general election in November, 1902, for a term of six years, whose terms of office did not begin until after January 1, 1903, no successors to such officers shall be elected until the general election in the year 1910. Section 2. In all cases where vacancies occur in any of said offices by reason of the death or resignation of any such officer, or by reason of the expiration of his term of office, or in any other manner, before January 1, 1904, and a successor is appointed to fill such vacancy, such appointee shall hold his office by virtue of such appointment only until January 1, 1904, and if any vacancies should occur in any of said offices after January 1, 1904, and such vacancies are filled by appointment, such appointees shall hold until the 1st day of January next succeeding the next general election held after such appointment. Section 3. All laws and parts of laws in conflict herewith are hereby repealed." The preamble of the act declares that it will promote the public interests to have the terms of all the officers named in the act begin and end at a uniform time, and to have their official year and the calendar year begin at the same time; and that it will also promote the public interests to have the official terms of all

of said officers begin with the beginning of the calendar year next succeeding their election, instead of at long and irregular intervals as at present: Therefore, for the purpose of securing the desired uniformity, the statute is enacted.

Fleming, the present incumbent of the office of county treasurer of Warren county, was elected for his second term at the general election held in November, 1902, for a term of two years. As the law stood when he was elected, this term began January 1, 1904, and will expire by its constitutional limitation January 1, 1906. Acts 1897, p. 288, §7989a Burns 1901. The act before us postpones the election of a successor to Fleming until the general election in November, 1906, and provides that such successor shall not take the office until January 1, 1907. The effect of the act is to continue Fleming, the present treasurer of Warren county, in that office for one year after the expiration of his present term. It also permits the general election in November, 1904, at which a successor to the treasurer might be elected, to pass, and fixes the time for the election of such successor at the November election in 1906. Out of 736 county offices, 185 will be affected by the act; 137 officers will hold over, and forty-eight vacancies will occur to be filled by appointment. Out of the offices and officers so affected, forty-seven circuit judges will have their terms extended an average of forty-seven days each, and eight will have their terms extended an average of fourteen months each; thirteen prosecuting attorneys will hold over for one year; thirty-seven county auditors will hold over for one year; twenty-nine clerks of the circuit courts will hold over for one year; twenty-seven recorders, thirty-one treasurers, eight sheriffs, and four coroners will be continued in office for one year after the expiration of the terms for which they were elected. The remainder of the officers affected by the act will each hold over from thirty days to seventy-three days. In twenty-two cases the elec-

tion of successors to the persons holding the several offices embraced in the act will be postponed.

Was it competent for the legislature to enact a statute having this effect upon public offices, public officers, and the election of such officers by the people? The validity of the act of February 11, 1903, is contested in this case on the grounds (1) that it prevents the election of the county treasurer by the voters of the county at the general election next preceding the expiration of the term of office of the present incumbent; (2) that it continues the treasurer now in office in that position more than two years; (3) that it continues the present treasurer in office for one year after the expiration of his present term, although he will be ineligible to said office by reason of his having held the office by election four years in a period of six years; (4) many other offices and officers, judicial and county, will be affected in the same manner.

On the other hand, to sustain the act, it is contended that: "(1) The legislative authority is supreme and subject to no restrictions except those which the Constitution expressly or impliedly imposes. (2) The postponement of an election, so as to continue incumbents in office longer than four years, is not violative of the constitutional prohibition that the legislature shall not create any office the tenure of which shall be longer than four years. Const., Art. 15, §2. Under such a law the terms of officers who hold longer than four years are not extended by the law, but the officers are continued in office by the Constitution itself (article 15, §3); or, if ineligible, successors are appointed under a statute by express constitutional authority. Const., Art. 6, §9. (3) The postponement by statute of the time when the term of one elected, or to be elected, to a constitutional office shall commence is not violative of article 6, §2, of the Constitution. (4) The Constitution does not prescribe a time for the commencement of any official terms except those of the executive and mem-

bers of the legislature. The power to fix the time for the commencement of the terms of other officers has been exercised by the legislature, without question, from the organization of the State. (5) The office of county treasurer was created by the Constitution, and the term fixed at two years, and until his successor is elected and qualified. The Constitution fixes the length of the term of office, but not when it shall commence. (6) It is possible by a legislative act to create a vacancy in a constitutional office by postponing the time for the commencement of a future term of office. Where this has been done, the people have no constitutional right to fill the vacancy by a popular vote at a general election which intervenes prior to the occurrence of the vacancy, but the vacancy must be filled by appointment, as by statute provided under article 6, §9, of the Constitution. (7) The fact that an office is named in the Constitution does not exempt it from legislative control. Excepting such protection as is guaranteed by the Constitution, it is as much subject to regulation by the legislature as is any office created by the General Assembly. * * * (9) There is no natural right of suffrage. Voting is a mere political privilege. Except as this privilege is guarded by the Constitution, it may be limited or extended by statute."

It may be admitted that the legislative authority is supreme, and subject to no restrictions except those which the Constitution expressly or impliedly imposes; that the time of the commencement of the term of office of the county treasurer and the other officers named in the act of February 11, 1903, is not fixed by the Constitution; and that, subject to the restrictions of the Constitution, the legislature may prescribe the time when the terms of such officers shall begin. It may also be true that offices created by the Constitution are, to some extent, subject to legislative control, and that the right to vote is a political privilege, and not a natural right. But the question remains, what are the limitations and restrictions imposed by the Constitution

upon the legislature in the enactment of statutes regulating the election of persons to fill county offices created by the Constitution, the commencement of their official terms, the continuance of officers in office beyond the periods named in the Constitution, and the nature of the legislation, whether general or local, by which such regulation and control is sought to be exercised.

The preamble of a statute may be examined for the purpose of ascertaining the meaning or proper construction of the act, but a recital of the objects to be accomplished, however desirable and meritorious those objects may be, can not cure inherent defects in the act, nor render it valid if in conflict with the organic law of the state. The purpose of the act of February 11, 1903, as stated in its preamble, is to secure uniformity in the commencement of the terms of the officers mentioned in it. Perhaps this may be desirable. Differences of opinion, however, may exist on this subject. Certainly, such uniformity is not indispensable. It has never existed heretofore, although the Constitution has been in force for many years, and the inconveniences arising from such want of uniformity, if there have been inconveniences, do not appear to have seriously interfered with the administration of the public business.

It is an obvious truism that Constitutions state general rules and maxims in accordance with which the powers of sovereignty are habitually exercised, rather than particular and specific directions for the manner and occasion of the exercise of that authority. Cooley, Const. Lim. (3d ed.), 2, 64.

A declaration in the Constitution of political privileges, rights, or powers to be exercised by the people of the State places them beyond legislative control or interference as effectually as if the instrument, in terms, declared that the people should not be deprived of them by an act of the General Assembly. The necessary implications arising from general provisions of this character are secondary in im-

portance only to the express letter of the Constitution itself.

Section 2, article 6, of the Constitution provides that there shall be elected in each county, by the voters thereof, at the time of holding general elections, a clerk of the circuit court, auditor, recorder, treasurer, sheriff, coroner, and surveyor; that the clerk, auditor, and recorder shall continue in office four years, and that no person shall be eligible to any of these offices more than eight years in any period of twelve years. It further provides that the treasurer, sheriff, coroner, and surveyor shall continue in office two years, and that no person shall be eligible to the office of treasurer or sheriff more than four years in any period of six years. Section 14, article 2, of the Constitution fixes the time of all general elections on the first Tuesday after the first Monday of November. General elections must take place every two years for the purpose of selecting members of the General Assembly.

Constitutional provisions, in most cases, are mandatory in the strictest sense, and the words used must be understood in their natural and ordinary meaning. *Gibbons* v. *Ogden* (1821), 9 Wheat. 1, 188, 5 L. Ed. 302.

The right of the voters of the State to fill the offices of clerk of the circuit court, auditor, recorder, treasurer, sheriff, coroner, and surveyor at the general election next before the expiration of the term of the persons filling any of these offices is plainly conferred by §2, article 6, *supra*. The office being constitutional and elective, the voters of the county are authorized to fill it at the first opportunity given under the Constitution. This right can not be taken away from them by the legislature, either directly, or indirectly, by an act postponing the choice of the officers named until a general election at which they might be elected has passed.

When the framers of the Constitution and the people who adopted it said in that instrument that "there shall be

elected in each county by the voters thereof, at the time of holding general elections," the officers named, they could have meant nothing else than that the succession to these offices should be secured, without vacancies or unnecessary extensions of terms by holding over after the expiration of the constitutional terms, by the election by the voters of each county of successors to such officers, who would be ready to take the offices and discharge their duties immediately upon the expiration of the terms of the previous incumbents. The only natural and reasonable time for such selection would be at the general election next preceding the expiration of the term of the incumbent. If the power of the legislature to postpone the choice of the successors to the incumbents of these offices at such election is conceded, it follows that the time for the election of such successors rests wholly in the discretion of the General Assembly. If this is the law, the control of the offices affected is taken from the people and resides exclusively in the legislature.

The act in question is subject to the further objection that it expressly extends the terms of office of county treasurers in many counties beyond the constitutional limit of two years, and in the case before us, as well as in several other instances, continues the treasurer in office more than four years in a period of six years. The proviso in the act declares, among other things, that, "in all cases where persons were elected to any of said offices at the general election in November, 1902, for a term of two years, whose terms of office did not begin until after January 1, 1903, no successors to such officers shall be elected until the general election in the year 1906." Acts 1903, p. 24.

It appears from the complaint that Fleming, the present incumbent of the office of county treasurer of Warren county, was elected to that office at the general election held in November, 1902, and that his term of office did not begin until January 1, 1904. That term will expire January 1,

1906. If no successor to Fleming is elected until the general election to be held in November, 1906, then by virtue of the act of 1903 he will continue in office from the expiration of his term on January 1, 1906, until January 1, 1907.

The purpose and legal effect of the act of February 11, 1903, if valid, was to continue the persons to whom it applied in office after the expiration of the terms fixed by the Constitution, and beyond the time at which said offices might be filled by the voters of the counties at a general election. It is true that the legislature, under certain conditions, may fix the time of the commencement of the terms of county officers, and this court so held in the cases of *Scott* v. *State, ex rel.* (1898), 151 Ind. 556, and *Weaver* v. *State, ex rel.* (1899), 152 Ind. 479. But the act of February 11, 1903, does much more than fix the date of the commencement of terms of office. It attempts to prevent the election of successors to incumbents, although elections occur at which such successors might be elected by the voters of the several counties. The unnecessary continuance in office of the persons embraced in the act beyond the limit of the terms fixed by the Constitution is a direct and unmistakable violation of that instrument. The argument that the legislature may fix the time of the commencement of the terms of office, where that time is not fixed by the Constitution itself, and that if the term of an incumbent is extended beyond the constitutional limit, the officer holds over by virtue of §3, article 15, of the Constitution, which provides that an officer shall hold his office for the constitutional term, and until his successor is elected and qualified, is fallacious. The latter provision was intended to prevent vacancies in the public offices to which it applies. It can not be understood to confer on the legislature the power to postpone unnecessarily the election of a successor to the office, and thereby create a condition authorizing the incumbent to hold over after the expiration of his term. The mischiefs

which would result from this construction of the Constitution, and the recognition of this authority in the legislature, are too evident to require discussion. By the adoption of measures of this character the legislative department could appropriate to itself an extensive and dangerous power and influence over a great number of offices and officers. Through this agency a political party might perpetuate its hold upon all public offices except those of governor and members of the General Assembly, and for considerable periods, or indefinitely, deprive the voters of the counties of the right to choose the officers who should administer the public affairs.

The case of *State, ex rel.,* v. *Askew* (1886), 48 Ark. 82, seems to be directly in point. The constitution of that state, §17, article 7, provided that "the judges of the circuit courts shall be elected by the qualified electors of the several circuits, and shall hold their offices for the term of four years." It was decided that the successor of a circuit judge must be elected at the first general election which should be held before the expiration of his term, and that an act of the legislature passed previous to the adoption of the constitution fixing a different time for the election of such successor was inoperative so far as it provided that the successor of a circuit judge should be elected at the first general election held after the expiration of the term. *Howard* v. *State, ex rel.* (1858), 10 Ind. 99; *Deweese* v. *State, ex rel.* (1858), 10 Ind. 343; *Markle* v. *Wright* (1859), 13 Ind. 548; 10 Am. and Eng. Ency. Law (2d ed.), 681; *Idem,* 406.

The act is objectionable for the further reason that it authorizes incumbents to hold their offices after they have become ineligible to do so. The words of the Constitution are that "no person shall be eligible to the office of clerk, auditor, or recorder more than eight years in any period of twelve years," and that "no person shall be eligible to the office of treasurer or sheriff more than four years in any

period of six years." Const., §2, Art. 6. True, these officers may hold over until their successors are elected and qualified. But successors must be elected at the general election next preceding the expiration of the terms of the incumbents of the offices. The legislature can not arbitrarily delay the election of such successors to a later period, and thereby render the incumbents of the offices eligible to hold over. The exigency intended to be provided against by §3, article 15, of the Constitution, is one which arises *ex necessitate* from the death, removal, failure of the successor to the office to qualify, or from the failure of the voters to elect such successor at the general election next preceding the expiration of the terms of the incumbents, or from the fact that no general election will be held at which such successors might be elected. The constitutional ineligibility of the incumbents attaches immediately upon the expiration of the second term, and a right to continue in the office for a further period until a successor shall be elected and qualified can not be created by an act of the legislature which deprives the voters of the power to choose such successor at a general election next preceding the expiration of the second term of the incumbent. The necessary implication from the language of §3, article 15, *supra,* is that the officer shall hold over only until his successor is elected at such general election next preceding the expiration of his term of office and his qualification thereafter. If, for any reason, such election should not be held, a vacancy in the office would probably occur, to be filled by appointment as in other cases. *Aikman* v. *State, ex rel.* (1898), 152 Ind. 567.

A further objection is made that the act is local, and that it therefore conflicts with §22, article 4, of the Constitution prohibiting the passage of local laws regulating the election of county officers. The conclusion we have reached, however, renders it unnecessary to review this question.

For the reasons stated we hold that the act of February

11, 1903, at least as to officers named in the Constitution, is void. It follows that the court did not err in overruling the demurrer to the alternative writ and complaint. Judgment affirmed.

Jordan, C. J., concurs in result.