# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2020-NMSC-002

Filing Date: December 19, 2019

No. S-1-SC-37723

**STATE OF NEW MEXICO ex rel.,
JOHN P. SUGG, DIANNA LUCE,
FRANCESCA MARTINEZ-ESTEVEZ,
CLINT WELLBORN, DONALD
GALLEGOS, ANDREA REEB,
PAULA PAKKALA, and
LEMUEL L. MARTINEZ,**

   Petitioners,

v.

**MAGGIE TOULOUSE OLIVER,
Secretary of State for the
State of New Mexico,**

   Respondent.

## ORIGINAL PROCEEDING

Released for Publication February 11, 2020.

John P. Sugg, District Attorney
Alamogordo, NM

for Petitioners

Hector H. Balderas, Attorney General
Olga Serafimova, Assistant Attorney General
Santa Fe, NM

for Respondent

InAccord, P.C.
Daniel A. Ivey-Soto
Albuquerque, NM

Walsh Gallegos Trevino Russo & Kyle, P.C.
Linda May Trujillo
Albuquerque, NM

for Amicus Curiae Legislative Sponsors

and

**No. S-1-SC-37785**

**STATE OF NEW MEXICO ex rel.,**
**HON. MARY MARLOWE SOMMER,**
**HON. NANCY JEAN FRANCHINI,**
**HON. CONRAD FREDERICK PEREA,**
**HON. ABIGAIL ARAGON,**
**HON. WILLIAM G.W. SHOOBRIDGE,**
**HON. JENNIFER E. DELANEY,**
**HON. SHANNON MURDOCK,**
**HON. JEFF MCELROY,**
**HON. FRED TRAVIS VAN SOELEN,**
**HON. ALBERT J. MITCHELL, JR.,**
**HON. DAYLENE MARSH,**
**HON. DANIEL A. BRYANT,**
**HON. CINDY M. MERCER,**
**As New Mexico State District Court Judges**
**and Citizens of New Mexico,**
**DISTRICT METROPOLITAN COURT**
**JUDGES' ASSOCIATION, INC.,**
**HON. VICTOR EDMUND VALDEZ, As a**
**Metropolitan Court Judge and**
**Citizen of the State of New Mexico,**

Petitioners,

v.

**MAGGIE TOULOUSE OLIVER,**
**Secretary of State for the**
**State of New Mexico,**

Respondent.

**ORIGINAL PROCEEDING**

The Vargas Law Firm, LLC
Ray M. Vargas, II
Albuquerque, NM

for Petitioners

Hector H. Balderas, Attorney General
Olga Serafimova, Assistant Attorney General
Santa Fe, NM

for Respondent

InAccord, P.C.
Daniel A. Ivey-Soto
Albuquerque, NM

Walsh Gallegos Trevino Russo & Kyle, P.C.
Linda May Trujillo
Albuquerque, NM

for Amicus Curiae Legislative Sponsors

and

**No. S-1-SC-37789**

**STATE OF NEW MEXICO ex. rel.,
NEW MEXICO ASSOCIATION OF
COUNTIES, MARK CAGE and
BOARD OF COUNTY COMMISSIONERS OF
THE COUNTY OF OTERO,**

Petitioners,

v.

**MAGGIE TOULOUSE OLIVER,
Secretary of State for the
State of New Mexico,**

Respondent.

**ORIGINAL PROCEEDING**

New Mexico Association of Counties
Steven Kopelman

Grace Philips
Patrick F. Trujillo
Santa Fe, NM

for Petitioners

Hector H. Balderas, Attorney General
Olga Serafimova, Assistant Attorney General
Santa Fe, NM

for Respondent

InAccord, P.C.
Daniel A. Ivey-Soto
Albuquerque, NM

Walsh Gallegos Trevino Russo & Kyle, P.C.
Linda May Trujillo
Albuquerque, NM

for Amicus Curiae Legislative Sponsors

**OPINION**

**VIGIL, Justice.**

**{1}** These separate, but related mandamus proceedings challenge the constitutionality of House Bill 407 (HB 407), 54th Leg., 1st Sess. (N.M. 2019), to the extent it postpones the times of election and extends the terms of certain public offices. 2019 N.M. Laws, ch. 212. Petitioners are among the class of public officers who would be affected by the election deferral provisions of HB 407; the petitioning groups represent district attorneys, district and metropolitan court judges, and county public officers. Petitioners' arguments, though variously framed, each turn in part upon the premise that HB 407 is unconstitutional insofar as it purports to extend their constitutionally mandated terms of office. This Court assumed original jurisdiction over the petitions under Article VI, Section 3 of the New Mexico Constitution. Concluding that the application of HB 407 would result in an unconstitutional alteration to the terms of office of all three petitioning groups, we issued writs of mandamus in each case directing Respondent, as Secretary of State (the Secretary), to refrain from implementing the affected provisions. In this opinion, we explain the reasoning and rationale underlying our issuance of writs of mandamus.

## I. STATUTORY BACKDROP

**{2}** The enactment of HB 407 accomplished a major overhaul of this state's Election Code, NMSA 1978 §§ 1-1-1 to -26 (1969, as amended through 2019). The challenged

provisions of HB 407 were motivated by what its legislative sponsors (the Sponsors) describe in their amicus briefs as an intent "to standardize the election dates for certain [county] offices[,]" "level" or "balance out the number of county officers on the ballot in any given election year," and "stagger the retention [elections]" of district and metropolitan court judges. To this end, the Legislature brought about what the Sponsors characterize as a "one-time realignment" of the ballot and term provisions governing certain elected offices.

**{3}**     With respect to the petitioning judges and county officers, the Legislature devised different two-tiered frameworks to effectuate its intended "staggered" election and "leveled" ballot goals. As to the county offices, the Legislature repealed the then existing version of NMSA 1978, Section 1-10-8 (2015), in favor of a new version of the statute. Subsection (A) of the amended version of Section 1-10-8 (2019) specifies the county clerk, county treasurer, and "county commission districts and positions with odd-numbered designations" as among the elected offices to be voted on in presidential election years, 2019 N.M. Laws, ch. 212, § 103(A)(13)-(15), while subsection (B) specifies the county sheriff, county assessor, probate judge, and "county commission districts and positions with even-numbered designations" as among the elected offices required to be on the ballot in gubernatorial election years. *Id.* § 103(B)(20)-(23). In tandem with the amendments made to NMSA 1978, Section 1-10-8, the Legislature also enacted a temporary provision designed to extend the terms of county offices as follows:

> The secretary of state shall provide a process to renumber district numbers so that offices are aligned with the offices listed for election in Section 1-10-8 NMSA 1978 and, where necessary, *shall provide for an extended term* to the general election in 2022 or 2024 only as required to align offices and positions to the offices listed for election in Section 1-10-8 NMSA 1978; provided that where one member of a local governing body must receive an extended term pursuant to this section, the secretary of state shall have the members whose terms expire the same year draw lots to make the determination.

2019 N.M. Laws, ch. 212, § 281 (emphasis added). Thus, HB 407, by express terms, calls for the postponement of elections for certain county offices in 2020, while expressly "extend[ing]" the terms of the incumbent office holders. *See id.* It appears that the practical impact of these provisions, if enforced, would extend the terms of office of nineteen county commissioners, three probate judges, two county clerks and sheriffs, one county treasurer, and either one or two county assessors.

**{4}**     The Legislature enacted a similarly intricate set of amendments to accomplish its stated goal of staggering the retention elections of district and metropolitan court judges. In this regard, the Legislature began by creating a new chapter of the Election Code, denominated as the Nonpartisan Judicial Retention Act, NMSA 1978, §§ 1-26-1 to -6 (2019). 2019 N.M. Laws, ch. 212, §§ 172 to -77. As here relevant, Chapter 212 Section 176(A) of the New Mexico Laws of 2019 calls for a retention election to be held

for each eligible district court judge "at the general election in the last year of the six-year term of office for the position in which the judge is serving[,]" while Section 176(B)(2)-(3) provides that the terms of office for district court positions "shall be staggered" so that "the term of office for division 2 and for every third division number thereafter shall expire in 2022 and every six years thereafter[,]" and that "the term of office for division 3 and for every third division number thereafter shall expire in 2024 and every six years thereafter." The term-staggering provision covering metropolitan court judgeships is laid out in Section 177. Subsection (A) of that section requires eligible metropolitan court judges to face a retention election "in the last year of the four-year term of office for the position in which the judge is serving[,]" and Subsection (B)(2) provides that "the term of office for division 2 and for every second division number thereafter shall expire in 2024 and every four years thereafter."

**{5}** Mirroring the approach it used in connection with county offices, the Legislature enacted temporary provisions addressed to district and metropolitan court judges, extending their terms of office so as to phase-in a new staggered election system. By these provisions, the terms of incumbent metropolitan court judges that were set to expire at the end of 2022 were extended for a two-year period, 2019 N.M. Laws, ch. 212, § 280, while the terms of incumbent district judges, each set to expire at the end of 2020, were extended for a two-year or four-year period depending on the particular judicial division involved. 2019 N.M. Laws, ch. 212, § 279(A)-(B). These term extensions were made "subject to the provisions of the Nonpartisan Judicial Retention Act and Article 6 of the [C]onstitution of New Mexico." *Id.* §§ 279(A)- (B), 280. Again, HB 407, by its terms, changes the election cycle for certain offices, this time district and metropolitan court judgeships, while expressly pushing back the expiration of sitting incumbents' terms.

**{6}** A different legislative landscape is presented with respect to HB 407's treatment of the election cycle for district attorneys. Even though district attorneys have appeared on the ballot in *presidential* election years since the dawn of New Mexico's statehood, these state officers were included among the list of officials slated to face election in *gubernatorial* election years. 2019 N.M. Laws, ch. 212, § 103(B)(17). This is so notwithstanding the absence from the house bill of any separate transitional provision addressing any change in election cycles. As the Sponsors now acknowledge, this situation was created by a scrivener's error stemming from the "inadvertent[ ] place[ment]" of the district attorneys "in the incorrect column" of Section 103 during the legislative drafting process. Accepting the Sponsors' representation that this change in election cycles was unintentional, its practical effect was nonetheless to remove the district attorneys from the 2020 ballot and place them instead on the 2022 ballot.

## II.     DISCUSSION

### A.     Mandamus Jurisdiction is Proper

**{7}** Before addressing Petitioners' constitutional claims, we explain the basis of our exercise of original mandamus jurisdiction in these matters. In determining whether to

exercise our original jurisdiction in mandamus, this Court applies a multi-factor test under which we will assume jurisdiction

> when the petitioner presents a purely legal issue concerning the non-discretionary duty of a government official that (1) implicates fundamental constitutional questions of great public importance, (2) can be answered on the basis of virtually undisputed facts, and (3) calls for an expeditious resolution that cannot be obtained through other channels such as a direct appeal.

*State ex rel. King v. Lyons*, 2011-NMSC-004, ¶ 21, 149 N.M. 330, 248 P.3d 878 (internal quotation marks and citation omitted); *see also* N.M. Const. art. VI, § 3 ("The supreme court shall have original jurisdiction in quo warranto and mandamus against all state officers, boards and commissions . . . ."); NMSA 1978, § 44-2-5 (1884) ("The writ shall not issue in any case where there is a plain, speedy and adequate remedy in the ordinary course of law."). Although relief by mandamus is most often applied "to compel the performance of an affirmative act by another where the duty to perform the act is clearly enjoined by law," *Rainaldi v. Pub. Emps. Ret. Bd.*, 1993-NMSC-028, ¶ 6, 115 N.M. 650, 857 P.2d 761 (internal quotation marks and citation omitted), the writ may also be used in appropriate circumstances "in a prohibitory manner to prohibit unconstitutional official action." *AFSCME. v. Martinez*, 2011-NMSC-018, ¶ 4, 150 N.M. 132, 257 P.3d 952. For example, prohibitory mandamus has been invoked to enjoin a secretary of state from undertaking a ballot-related action that is beyond her authority, *see Unite N.M. v. Oliver*, 2019-NMSC-009, ¶ 1, 438 P.3d 343, or submitting to the voters an unconstitutional initiative proposal, *see McFadden v. Jordan*, 196 P.2d 787 (Cal. 1948) (in bank) (cited approvingly in *State ex rel. Clark v. Johnson*, 1995-NMSC-048, ¶ 19, 120 N.M. 562, 904 P.2d 11).

**{8}** In view of the legal nature and public importance of the election issues raised herein, the need for an expeditious resolution of those issues in the face of stringent ballot access requirements, and the unavailability of an adequate alternate remedy, we conclude that Petitioners' claims call for the use of prohibitory mandamus. Notably, the Secretary, far from objecting to the exercise of our original jurisdiction, seemingly endorses it, urging us to provide an "early resolution" of the constitutional questions raised in the petitions. As a general rule, this would preclude the Sponsors, in their role as amici curiae, from raising any such objection on their own behalf. *See St. Vincent Hosp. v. Salazar*, 1980-NMSC-124, ¶ 9, 95 N.M. 147, 619 P.2d 823 ("Amicus must accept the case on the issues as raised by the parties, and cannot assume the functions of a party." (internal quotation marks and citation omitted)). That rule is not absolute, however, and may give way in circumstances where, as here, a case presents issues of a purely legal nature that are of widespread impact and importance. *See Reichert v. State ex rel. McCulloch*, 2012 MT 111, ¶¶ 24-27, 365 Mont. 92, 278 P.3d 455 (reaffirming but departing from the general rule in considering a judicial recusal question of significant importance that was raised in a legislative amicus brief but not by the parties themselves); *Fisher v. City of Berkeley*, 693 P.2d 264, 270-72 (Cal. 1984) (in

bank) (considering an amicus argument in support of invalidating a rent control ordinance).

{9}      In addressing the Sponsors' arguments opposing mandamus review, we remain convinced that mandamus is the appropriate remedy in these cases. It is clear that the electoral timing and term of office provisions of HB 407—postponing the elections for and extending the terms of a number of vital public offices—present issues of the utmost public importance. These issues implicate our citizens' fundamental right to vote, *see State ex rel. League of Woman Voters v. Herrera*, 2009-NMSC-003, ¶ 8, 145 N.M. 563, 203 P.3d 94 (reiterating "the longstanding and fundamental principle that the right to vote is of paramount importance[,]" and encouraging courts to "guard against voter disenfranchisement whenever possible"), and bear on the accountability of our elected officials. *See* Christopher R. Berry & Jacob E. Gersen, *The Timing of Elections*, 77 U. Chi. L. Rev. 37, 40 & n.9 ("[T]he frequency of elections or, equivalently, the duration for which a selected politician is able to stay in office without reelection may effect government accountability and the legitimacy of public policy."). That being so, the satellite issue addressed by the parties as to whether Petitioners would be subject to removal by way of a writ of quo warranto during their extended terms is not determinative of our decision to entertain Petitioners' writ applications. We note, nonetheless, that the Sponsors' stated position on the issue—that quo warranto will lie only where the party proceeded against has committed an act that works a forfeiture of his or her office—too narrowly states the parameters of the writ. To the contrary, quo warranto has long been recognized under New Mexico law as an appropriate vehicle to "ascertain whether one is constitutionally authorized to hold the office he claims, whether by election or appointment," *State ex rel. Anaya v. McBride*, 1975-NMSC-032, ¶ 16, 88 N.M. 244, 539 P.2d 1006, and this irrespective of any active fault or wrongdoing on the office holder's part. *See Clark v. Mitchell*, 2016-NMSC-005, ¶¶ 8-9, 363 P.3d 1213 (stating the above-quoted principle in entertaining but rejecting a private petitioner's claim that the respondent district judge was not constitutionally authorized to be appointed to the district court following his nonretention in the previous general election); *see* NMSA 1978, § 44-3-4(A) (1919) (authorizing an action for a writ of quo warranto "when any person shall usurp, intrude into or *unlawfully hold or exercise* any public office . . . within this state" (emphasis added)).

{10}    We turn next to the Sponsors' contention, directed solely to the district attorneys' petition, that issuance of a writ of mandamus is unnecessary at this juncture given the Sponsors' stated "motivat[ion]" to remedy the drafting "misplacement" error at the upcoming legislative session, a remedy which they characterize as "a doable proposition." The Sponsors' assurances about the potential passage of an amendment to HB 407 at the next legislative session remain subject to the uncertainties of the political process. As such, these assurances, while no doubt sincere, provide an insufficient basis for us to withhold exercise of original jurisdiction over the district attorneys' writ petition. *See Howell v. McAuliffe*, 788 S.E.2d 706, 724 n.17 (Va. 2016) (stating that an alternate remedy is sufficient to displace the need for mandamus relief where, among other things, it "secure[s] the whole right of the party in a perfect manner, *at the present time* and in the future" (emphasis added) (internal quotation marks and

citation omitted)). *But see Denish v. Johnson*, 1996-NMSC-005, ¶ 57, 121 N.M. 280, 910 P.2d 914 (concluding that a writ of mandamus was unnecessary where the respondent Governor had "agreed to the act in question—appointing the successors to [the petitioners] in accordance with the State Constitution"). Having determined that prohibitory mandamus is an appropriate means of addressing Petitioners' constitutional claims, we proceed to analyze those claims.

## B.     The Constitutionality of Election Deferral Statutes

**{11}**    The challenged portions of HB 407, whether by design or oversight, all share a common feature, i.e., they postpone the time of election of certain public offices by either two or four years, thus extending their terms of office. The election deferral aspect of HB 407 is raised in each of the underlying mandamus proceedings, with Petitioners questioning the constitutionality of HB 407 to the extent it alters the term duration requirements of their respective offices. *See* N. M. Const. art. X, § 2(A) (mandating that the ordinary term for a county official is four years); *id.* art. VI, § 24 (providing that a district attorney "shall be elected for a term of four years"); *id.* art. VI, § 33(C)-(D) (stating that each district and metropolitan court judge "shall be subject to retention or rejection in like manner at the general election" every sixth and fourth year, respectively). The narrow but important question we need address, then, is whether the challenged provisions of HB 407, in delaying Petitioners' election cycles and extending—either expressly or, in the case of the office of the district attorney, by necessary implication—their term limits, exceeded the Legislature's authority. *See generally State ex rel. Sandel v. N.M. Pub. Util. Comm'n*, 1999-NMSC-019, ¶ 11, 127 N.M. 272, 980 P.2d 55 (limiting the issues presented by the parties in exercising our mandamus authority). For reasons that follow, we answer that question in the affirmative and thus abide by our decision striking down the offending provisions, i.e., 2019 N.M. Laws, ch. 212, Sections 103(A)(13)-(15), 103(B)(17), 103(B)(20)-(23), 176(B), 177(B), and 279 to -81.

### 1.     The proper "level of scrutiny" to be applied in evaluating Petitioners' constitutional challenges to HB 407

**{12}**    As a preliminary matter, the Sponsors raise concerns over the appropriate "level of scrutiny" that we should apply in evaluating Petitioners' constitutional challenges to HB 407. They cite as guideposts this Court's decisions in *Crum v. Duran*, 2017-NMSC-013, ¶ 10, 390 P.3d 971 (applying the balancing test articulated in *Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992), in determining whether the state's interests outweighed the burdens imposed on voters by certain preelection registration requirements), and *Kane v. City of Albuquerque*, 2015-NMSC-027, ¶ 9, 358 P.3d 249 (recognizing that governmental restrictions on the "right to candidacy and the right to vote are subjected to differing levels of scrutiny"). The cited portions of these two cases, however, focus on the *merits* of challenges to restrictions on access to the electoral process and not, as involved here, threshold claims addressing the Legislature's *constitutional authority* to act in the first instance. The controlling inquiry in these latter circumstances poses the more elemental question of whether the reviewing court is "satisfied beyond all

reasonable doubt that the Legislature went outside the Constitution in enacting the challenged legislation." *Espanola Hous. Auth. v. Atencio*, 1977-NMSC-074, ¶ 3, 90 N.M. 787, 568 P.2d 1233. In determining this discrete issue, the Court does not "inquire into the wisdom, the policy or the justness" of the legislative act under review. *Id.*

## 2.   The relevant authorities

**{13}**   We begin our substantive analysis by affirming the time-worn principle that a legislative body cannot generally "extend the term of the incumbent of an elective office where the term is fixed by the constitution[,]" and the corollary that the altering of a constitutional term of office may be accomplished only by "the vote of the people ratifying a constitutional amendment[.]" 63C Am. Jur. 2d Public Officers and Employees § 138 (2009). These precepts have been widely applied by courts nationwide. *See, e.g.*, *In re Advisory Op. to the Governor—Terms of Cty. Court Judges*, 750 So.2d 610, 613-14 (Fla. 1999) (recognizing that "the right of selecting officers for fixed terms belongs to the people, and the legislature is not permitted to defeat this right by changing the length of term of office after an officer has been elected" (internal quotation marks and citation omitted)); *In re Munnelly v. Newkirk*,  692 N.Y.S.2d 195, 198 (N.Y. App. Div. 1999) (per curiam) (concluding that "the statutory provision for biennial, odd-numbered-year town elections for town officers [and] the common practice of staggering the terms of town justices" were insufficient to "override[] the constitutional four-year term" of those justices found in the "plain language" of the state constitution. (citation omitted), *aff'd* 716 N.E.2d 182 (N.Y. 1999)); *People ex rel. Bua v. Powell*, 234 N.E.2d 801, 804 (Ill. 1968) (stating that the General Assembly "had no more power to continue the judges in office by . . . means [inconsistent with the state constitution] than [it] would have had to provide that no election should be thereafter held, so as to continue the incumbents of the offices therein during their lives" (internal quotation marks and citation omitted)). Notably, neither the Secretary nor the Sponsors directly question the efficacy or application of these precepts here.

**{14}**   The constitutional waters become muddied, however, in situations where the terms of public officers are impliedly extended as a result of statutes which serve to defer the time of an election. *See* R.P. Davis, Annotation, *Power of Legislature to Extend Term of Public Office*, 97 A.L.R. 1428, § VI, at 1448 (1935) ("[I]t is impossible to state any general rule governing the question whether the legislature may, incidentally to postponing the time for an election, extend the term of an incumbent of an office."). Constitutional review of such statutes often turns on the proper interpretation of a constitutional or statutory provision allowing public officers to hold office until their successors have been qualified, a so-called holdover provision of the type found in Article XX, Section 2 of the New Mexico Constitution. No New Mexico case has dealt with this type of statute, and the out-of-state decisions on the subject yield no firm rule, a circumstance due in part to the dependence of those decisions on the particular language of the constitutional and statutory provisions there under review. *See* Davis, Annotation, 97 A.L.R. 1428, § VI, at 1448-57.

**{15}** Broadly speaking, the jurisdictions that have weighed in on the constitutionality of election deferral statutes are divided into two camps. Courts that uphold legislative acts which delay elections for offices with constitutionally mandated term lengths generally draw a distinction between an impermissible extension of terms and what has been described variously as an interim, hiatus, interval, or interregnum separating terms. In urging us to uphold the constitutionality of HB 407, the Sponsors rely on two such cases, *State ex rel. Martin v. Preston*, 385 S.E.2d 473 (N.C. 1989), and *Murray v. Payne*, 21 P.2d 333 (Kan. 1933). In *Preston*, the North Carolina Supreme Court explained and upheld the statutory election regime there under review as follows:

> [T]he legislature eliminated staggered terms within multi-seat judicial districts by creating a one-time interim or hiatus between certain terms of office. *The current terms were not extended*; they expire at the end of their eight-year duration. The next eight-year terms do not commence immediately upon the expiration of the old terms, however, but are instead made to commence two years, or in one case four years, later. Since no successors will be elected and qualified at the expiration of the old terms, the incumbent judges will continue to serve. Our [c]onstitution anticipates such "hold over" situations by providing that elected judges remain in office "until their successors are elected and qualified." N.C. Const. art. IV, § 16.

*Preston*, 385 S.E.2d at 480 (emphasis added). While acknowledging that the "distinction between extended terms and an interim or hiatus separating terms may appear artificial at first," the *Preston* Court ultimately adhered to this distinction, placing strong reliance on the premise that it was the state constitutional "hold over" provision, not the legislative act, that allowed the judges to remain in office. *Id.* at 480, 482. *See id.* at 482 ("Where, as here, the incumbents' terms end without successors having been elected and qualified, and new terms of office have not begun, the [c]onstitution's 'hold over' provision operates and allows the incumbents to continue serving in the interim.").

**{16}** Of a similar mind was the majority of the Kansas Supreme Court in *Murray*, whose views on the issue the *Preston* Court adopted as "persuasive." *Preston*, 385 S.E.2d at 481. The Depression-era special legislation under consideration in *Murray*, largely intended as a cost-saving measure to "avoid[] expense of unnecessary elections," dispensed with biennial elections in cities of a certain population for, among other offices, the commissioner of parks and public property whose regular term was four years, and provided for quadrennial elections in the future. *Murray*, 21 P.2d at 333-34. The court in *Murray* easily and unanimously rejected the plaintiff's narrow challenge to the election deferral aspect of the statute based on the legislature's "undoubted power" to determine the frequency of elections in order to serve "the public interest and welfare." *Id.* at 335. Although that limited holding disposed of the plaintiff's central claim, the *Murray* majority, in dicta specifically intended to forestall future lawsuits, and over a two-member dissent, went on to address the "incidental and collateral" issue of whether any incumbent officers could legally hold over beyond their four-year term limits during the "interval" created by the statute. *Id.* at 335-36. Endorsing such a "provisional"

holdover arrangement so long as the postponement of elections is "reasonable" in duration, *id.* at 336, the majority in *Murray* stated as follows, in language quoted approvingly in *Preston*, 385 S.E2d at 481:

> When there is an interval between the end of a term and the beginning of another, the public business must go on without interruption. Some one must do the business in the capacity of a public officer . . . The prevailing rule in the United States is that in the absence of a constitutional or statutory provision to the contrary, express or implied, an officer is entitled to hold until his successor is chosen and has qualified.

*Murray*, 21 P.2d at 335.

**{17}** Other courts view the issue differently, taking the position that "the legislature cannot, by an act postponing the election to an office, the term of which is limited by the [c]onstitution, extend the incumbent's term beyond the period so limited." Davis, Annotation, 97 A.L.R. 1428, § VI, at 1448. Illustrative of this approach are two Indiana cases, *Robinson v. Moser*, 179 N.E. 270 (Ind. 1931), and *Gemmer v. State ex rel. Stephens*, 71 N.E. 478 (Ind. 1904). In each case, the Indiana Supreme Court struck down the election deferral statute under review as unconstitutional. In *Robinson*, the court concluded that the legislature was "without power to dispense with the election of prosecuting attorneys" for a two-year period extending beyond their two-year constitutional term of office. 179 N.E. at 274. In *Gemmer*, the court similarly determined that the legislature "cannot arbitrarily delay" the election of successors to the county treasurer office and "thereby render the incumbents of the offices eligible to hold over" past the expiration of their constitutionally prescribed two-year term. 71 N.E. at 483. Significantly, in both *Robinson* and *Gemmer*, Indiana's high court rejected the use of the state's constitutional holdover provision as a means to extend constitutional offices beyond the term for which they were elected. *Robinson*, 179 N.E. at 276 (Myers, J., concurring); *Gemmer*, 71 N.E. at 482-83. Other aspects of these two cases also cast doubt on the viability of the *Preston/Murray* doctrine in New Mexico, as will be addressed in Section II (B)(4), *infra*.

**3.    The plain terms of HB 407 establish that the Legislature exceeded its authority in extending the terms of office of the petitioning judges and county officers**

**{18}** HB 407, as written, appears to mix apples and oranges in combining two divergent elements: the election deferral provisions at the center of the *Preston/Robinson* judicial divide, alongside express term extension language of the kind typically struck down as unconstitutional. This approach—readily acknowledged by the Sponsors to be "novel"—precludes our adoption of the *Preston/Murray* line of cases in assessing the constitutionality of HB 407.

**{19}** As previously indicated, the Legislature, in enacting HB 407, expressly extended the terms of office of certain district and metropolitan court judgeships, *see* 2019 N.M.

Laws, ch. 212, §§ 279 to -80, and authorized the Secretary to "provide for an extended term to the general election in 2022 or 2024" of certain county offices. *Id.* § 281. It is these explicit term extension provisions that are a dominant feature of HB 407 and that markedly differentiate the house bill from the election deferral statute upheld as constitutional by the North Carolina Supreme Court in *Preston*, under which "[t]he current terms [of certain superior court judges] *were not extended*[,]" 385 S.E.2d at 480 (emphasis added), and the similar statute upheld by the Kansas Supreme Court in *Murray*, whose provisions created "an interval between *the end of a term* and the beginning of another[.]" 21 P.2d at 335 (emphasis added). Given these major conceptual differences, it is difficult, if not impossible, to reconcile our Legislature's clear statutory intent to *extend* the terms of certain judgeships and county offices, as expressed by the plain language it chose in HB 407, with the "hiatus" and "interval" concepts applied in *Preston* and *Murray*, concepts premised on the *ending* of an incumbent's term of office. To adopt the *Preston/Murray* approach in reviewing and upholding the constitutionality of HB 407, as the Sponsors now ask us to do, would require this Court, under the guise of judicial interpretation, to rewrite the provisions of HB 407 by excising its unambiguous term extension provisions. This we cannot do. *See State v. Frawley*, 2007-NMSC-057, ¶ 30, 143 N.M. 7, 172 P.3d 144, *superseded by statute*, NMSA 1978, § 31-18-15.1 (as amended 2009) ("It is a fundamental principle that we cannot rewrite or add language to a statute in order to make it constitutional." (citing *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 479 & n.26 (1995)); *see also In re Gach*, 889 N.W.2d 707, 717 (Mich. Ct. App. 2016) (refusing to "judicially effect a substantial revision of [a] statute to salvage its constitutionality").

### 4. The *Preston/Murray* approach is incompatible with our state constitution

**{20}** Even had HB 407 been devised and drawn as a pure election deferral statute, unencumbered by any express term extension provisions, the end result would be the same, for the "hiatus" and "interval" constructs underlying the *Preston/Murray* line of cases are inconsistent with the purpose and effect of the relevant provisions of our state constitution. Put differently, had the Legislature omitted from HB 407 any explicit references to term extensions, it is not altogether clear by what mechanism it could create an election deferral statute sufficient to both accomplish its stated goals and pass constitutional muster. As indicated, examination of the constitutional provisions at play in a particular case generally provides the point of departure in evaluating the constitutionality of an election deferral statute. *See, e.g.*, *Preston*, 385 S.E.2d at 481 (distinguishing and declining to follow *Gemmer*, 71 N.E. 478, based on the differences between the constitutional provisions governing those cases). As to the petitioning judges and district attorneys, the Legislature's attempts to modify their election cycles contravened clear and unambiguous constitutional mandates. Specifically, in requiring district and metropolitan court judges to face "retention or rejection" at general elections every sixth and fourth year, respectively, *see* N.M. Const. art. VI, § 33(C)-(D), the framers of our Constitution evinced a clear intent to establish outer time limits by which retention elections for these classes of judges must be held. *Compare Gemmer*, 71 N.E. at 482 (invalidating legislation intended to modify a constitutional election schedule which, among other provisions, required elections for the county office in dispute every

two years), *with Preston*, 385 S.E.2d at 481 (noting the absence from North Carolina's constitution of an election schedule for judges and the inclusion into its constitution of election schedules for other public offices, and concluding that the disparity "evidences a constitutional intent for flexibility in setting the times for holding judicial elections"). Because eligible district and metropolitan court judges most recently faced retention elections at the 2014 and 2018 general elections, respectively, our constitution demands that they again face the voters at the 2020 and 2022 general elections, respectively.

{21}    The situation presented by HB 407's inadvertent postponement of the anticipated 2020 elections for district attorneys also involves the modification of a constitutionally prescribed election schedule, one established by the combined effect of two provisions of our state constitution, i.e., Article VI, Section 24 (creating the office of district attorney in each judicial district and requiring that a district attorney "be elected for a term of four years"), and Article XXII, Section 22 (providing that the term of office of all state officers elected at the initial statewide election "shall commence on the date of their qualification and shall expire at the same time as if they had been elected on the Tuesday next after the first Monday of November in the year nineteen hundred and twelve"). *See also State ex rel. Ward v. Romero*, 1912-NMSC-011, ¶ 35, 17 N.M. 88, 125 P. 617 (recognizing that "the district attorney under the [c]onstitution[] is a [s]tate officer"). In *Robinson*, the Indiana Supreme Court was presented with analogous circumstances and similar constitutional language, including provisions that a prosecuting attorney "shall be elected in each judicial circuit by the voters thereof . . . [and] shall hold his office for two years[,]" and that the first election for prosecuting attorney was to be held "at the general election in the year one thousand eight hundred and fifty-two . . . ." 179 N.E. at 271. The majority in *Robinson* invalidated the election deferral statute there under review, with the principal opinion concluding that "the mandate" of its state constitution was to elect prosecuting attorneys biennially, consistent with the office's constitutionally prescribed two-year term of office. *Id.* at 272. The concurring opinion added that this was so even in the absence of any "express constitutional provision requiring that prosecuting attorneys be elected at any fixed time," reasoning that the constitutional requirement that prosecuting attorneys hold office for two years itself "serves to inhibit the [l]egislature from passing any law that would prevent the voters [from] electing prosecuting attorneys at each biennial general election, thereby avoiding extending a constitutionally fixed term or the creating of a vacancy." *Id.* at 275-76 (Myers, J., concurring). Applying these principles, and considering that district attorneys last appeared on the ballot in New Mexico in 2016, our Legislature was without authority to dispense with their elections in 2020, and thereby extend their constitutional four-year terms of office.

{22}    Finally, we reject the notion that the holdover provision set out in Article XX, Section 2 of the New Mexico Constitution—requiring public officers, unless removed, to hold office until successors are "duly qualified"—can properly be construed to furnish a constitutional safe haven for election deferral statutes of the type endorsed in the *Preston/Murray* line of authority. First, as the Secretary appropriately acknowledges, it cannot be said that the term of office "hiatus" and "interval" constructs applied in those

cases fit, neatly or otherwise, within the contours of our constitutional holdover provision as interpreted by this Court. *See Denish*, 1996-NMSC-005, ¶ 51 (recognizing in a different but related context that, with respect to electoral systems involving staggered terms, our constitutional holdover provision "is not a simple extension of the expired term[, but] . . . an intrusion of the term following"). Our stated view in *Denish* of a holdover period as an "intrusion" into the ensuing term leaves little room to adopt the "interval between terms" theory embraced in *Preston* and *Murray*, at least with respect to staggered election systems. Even putting aside the analytic differences, there is an inconsistency from a policy perspective as well. It appears plain that the purpose of Article XX, Section 2 is to ensure continuity in governmental operations during unexpected times of transition when there is no successor to fill a vacancy in office, and not to facilitate a delay in election cycles—even for well-intended reasons—in the normal course of affairs. *See generally* N.M. Att'y Gen. Op. 23-3687, at *35 (1923) (recognizing that holdover provisions of the type set forth in Article XX, Section 2 are not designed to give an incumbent office holder "two terms in case his successor die[s] before qualifying[,]" but rather "simply to prevent a hiatus in the office in case the new officer for any reasons fail[s] to qualify" (internal quotation marks and citation omitted)). The language used by the Indiana Supreme Court in *Gemmer* in explaining the purpose of that state's counterpart holdover provision rings true and carries the day here:

> The [holdover] provision was intended to prevent vacancies in the public offices to which it applies. It cannot be understood to confer on the [l]egislature the power to unnecessarily postpone the election of a successor to the office, and thereby create a condition authorizing the incumbent to hold over after the expiration of his term. The mischiefs which would result from this construction of the [c]onstitution and the recognition of this authority in the [l]egislature are too evident to require discussion. By the adoption of measures of this character the legislative department could appropriate to itself an extensive and dangerous power and influence over a great number of offices and officers.

71 N.E. at 483.

## III.   CONCLUSION

**{23}**   We hold that the challenged provisions of HB 407 impermissibly alter the constitutionally prescribed terms of office of the three petitioning groups. In reaching this conclusion, we are of course mindful that the Legislature is vested with broad authority to regulate the timing, process, and conduct of elections. *See* N.M. Const. art. VII, § 1(B). That authority, despite its breadth, must be exercised within constitutional limits, *Unite N.M.*, 2019-NMSC-009, ¶ 6, a requirement clearly not met here. Assuming, as appears to be the case, that the Legislature wishes to pursue the election-related policy goals sought to be effectuated through the portions of HB 407 that we strike down today, it is its prerogative to propose, and the voters to adopt, a constitutional amendment to that end.

**{24}** IT IS SO ORDERED.

**BARBARA J. VIGIL, Justice**

**WE CONCUR:**

**JUDITH K. NAKAMURA, Chief Justice**

**MICHAEL E. VIGIL, Justice**