The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number:**

**Filing Date:** April 10, 2023

**NO. S-1-SC-39546**

**INDIGENOUS LIFEWAYS,**
**NEW MEXICO SOCIAL JUSTICE**
**EQUITY INSTITUTE, and**
**THREE SISTERS COLLECTIVE,**

     Petitioners,

v.

**NEW MEXICO COMPILATION COMMISSION**
**ADVISORY COMMITTEE,**

     Respondent,

and

**MICHELLE LUJAN GRISHAM,**
**in her official capacity as Governor**
**of the State of New Mexico,**

     Intervenor-Real Party in Interest.

**ORIGINAL PROCEEDING**

Butt Thornton & Baehr, P.C.
Sarah L. Shore
Albuquerque, NM

for Petitioners

Hector H. Balderas, Attorney General
Mark W. Allen, Assistant Attorney General
Scott C. Cameron, Assistant Attorney General
Santa Fe, NM

for Respondent


Holly Agajanian, Chief General Counsel
Kyle P. Duffy, Deputy General Counsel
Santa Fe, NM

for Intervenor Governor Michelle Lujan Grisham


Fuqua Law & Policy, PC
Scott Fuqua
Santa Fe, NM

for Amici Curiae Retake Our Democracy and Indivisible Albuquerque

**OPINION**

**VIGIL, Justice.**

**I.      INTRODUCTION**

{1}      The New Mexico Constitution prohibits logrolling[1] by directing: "If two or more [constitutional] amendments are initiated by the legislature, they shall be so submitted as to enable the electors to vote on each of them separately." N.M. Const. art. XIX, § 1. A constitutional amendment proposed by the Legislature and approved by the electorate in the 2020 general election made a number of changes governing the New Mexico Public Regulation Commission (Commission or PRC). N.M. Const. art. XI, §§ 1-2. Those changes included alterations to the selection, qualifications, and terms of Commission members, *id*. § 1, and revision to the PRC's constitutionally assigned responsibilities, *id*. § 2. The issue we address here is whether the amendment is void because it violates the constitutional prohibition against logrolling.

---

[1]"The legislative practice of including several propositions in one . . . proposed constitutional amendment so that the legislature or voters will pass all of them, even though these propositions might not have passed if they had been submitted separately. Many state constitutions have single-subject clauses that prohibit this practice." *Logrolling*, *Black's Law Dictionary* (11th ed. 2019).

{2}     Petitioners are three nonprofit organizations who represent the rights of Native Americans. Petitioners ask this Court to declare the ratification of the constitutional amendment a nullity and to issue a writ of mandamus directing Respondent Advisory Committee of the New Mexico Compilation Commission (Advisory Committee) to remove the amendment from the Constitution. The Advisory Committee responds that Petitioners' challenge is untimely and improperly raised against the committee through a petition for writ of mandamus, but takes no position on the merits. Governor Michelle Lujan Grisham, who was granted leave to intervene in these proceedings, joins the Advisory Committee's timeliness arguments and additionally argues that the amendment is constitutional.

{3}     After hearing oral arguments, we denied the petition for writ of mandamus, holding that the petition was timely, but that the amendment did not violate Article XIX, Section 1.

## II.     BACKGROUND

{4}     During the 2019 legislative session, the Legislature passed a senate joint resolution proposing to make several changes to the sections of our Constitution that create and govern the PRC. *See* 2019 N.M. Laws, Constitutional Amendment 1 (Amendment 1). Amendment 1 would change the method of selecting Commission members. *Id*. § 1(A)-(B). Previously, Article XI, Section 1 provided that the PRC

was to consist of "five members elected from districts provided by law for staggered four-year terms beginning on January 1 of the year following their election." N.M. Const. art. XI, § 1 (1996, amended 2020). The Legislature proposed to amend the section to provide that, beginning on January 1, 2023, the PRC would consist of three members appointed by the Governor with the advice and consent of the Senate. Amendment 1, § 1(A)-(B). Commission members would be selected from a list of nominees submitted to the Governor by a nominating committee, and would serve six-year, staggered terms. *Id.* § 1(B)-(C). Additionally, the Legislature proposed to amend provisions addressing the removal, qualifications, and continuing education requirements of Commission members. *Id.* § 1(D)-(E).

{5}     The Legislature also proposed to amend the PRC's constitutionally defined responsibilities. *Id.* § 2. When originally created, the PRC was tasked with regulating a variety of public service companies, including public utilities, transportation companies, telecommunications companies, business corporations, and insurance companies. N.M. Const. art. XI, § 2 (1996, amended 2020). In 2012, voters approved an amendment to remove business corporations and insurance companies from within the PRC's purview. *See* 2012 N.M. Laws, Constitutional Amendment 3, § 1; N.M. Const. art. XI, § 2 (1996, amended 2012). Amendment 1 would further refine the PRC's responsibilities to include the regulation of public utilities and "other

3

public service companies in such manner as the legislature shall provide." Amendment 1, § 2; N.M. Const. art. XI, § 2.

{6} The proposed changes to Article XI, Sections 1 and 2 were submitted to the electorate in a single-ballot question. *See* N.M. Sec'y of State, 2020 General Election Voter Guide at 6, (Nov. 3, 2020) (2020 Voter Guide), https://www.sos.state.nm.us/wp-content/uploads/2020/09/2020-Voter-Guide-English-FINAL.pdf (last visited March 22, 2023). The question was identified as Constitutional Amendment 1, with the following title:

> Proposing To Amend The Constitution Of New Mexico To Provide That The Public Regulation Commission Consist Of Three Members Appointed By The Governor From A List Of Professionally Qualified Nominees Submitted To The Governor By A Nominating Committee As Provided By Law And That The Commission Is Required To Regulate Public Utilities And May Be Required To Regulate Other Public Service Companies.

*Id.* In accordance with NMSA 1978, Section 1-16-7(B) (2019) and The Form of Ballot Question, 1.10.16.8(H) NMAC, this language tracked verbatim the title of the senate joint resolution proposing Amendment 1. *Compare* 2020 Voter Guide, *with* Amendment 1.

{7} Amendment 1 was subject to widespread scrutiny and debate before the election. The Secretary of State also prepared and published the 2020 Voter Guide, which recited Amendment 1's ballot title, described the amendment's purpose,

4

summarized some of the arguments for and against the amendment, and reproduced a redline version of Article XI, Sections 1 and 2 showing the proposed changes. 2020 Voter Guide at 6-16.

{8}     During the 2020 legislative session, the Legislature passed a comprehensive set of implementing laws in anticipation of Amendment 1's approval. *See* 2020 N.M. Laws, 2d Sess., ch. 9, §§ 15-23. Amendment 1 was ratified at the November 2020 general election, with a sound majority voting in favor of the amendment. *See* N.M. Sec'y of State, 2020 General Election Official Results, https://electionresults.sos.state.nm.us/Default.aspx?eid=2782 (last visited March 22, 2023) (follow the "Statewide Offices & Questions" hyperlink). Following Amendment 1's approval, the amendment was compiled into the New Mexico Constitution. *See* N.M. Const. art. XI, §§ 1-2.

**III.     DISCUSSION**

{9}     Petitioners filed the petition at issue after the 2020 general election, shortly before the changes in the PRC were to take effect on January 1, 2023. Petitioners seek a writ of mandamus against the Advisory Committee directing the committee to advise and approve the removal of Amendment 1 from the Constitution. As grounds for this requested relief, Petitioners argue that Amendment 1 is null and void and that its purported ratification is a nullity because the amendment was

submitted to voters in violation of the constitutional prohibition against logrolling in Article XIX, Section 1. Petitioners advance two theories for this claimed constitutional violation.

{10} First, Petitioners argue that Amendment 1 logrolled multiple independent measures into a single-ballot question, accusing the Legislature of "piggybacking the repeal of fundamental democratic rights on unrelated measures likely to be popular with voters." Petitioners thus claim that the amendment violates the single-measure rule explicit in Article XIX, Section 1. Second, Petitioners assert that the ballot title identifying Amendment 1 was misleading. Petitioners argue that this allegedly misleading title violates a requirement of ballot clarity or accuracy that they ask this Court to recognize as implicit within Article XIX, Section 1.

{11} Before reaching the merits of Petitioners' challenge, we address a question raised by the Advisory Committee about the propriety of mandamus relief. We also address the Advisory Committee's and the Governor's arguments about the timeliness of the petition.[2] Concluding that there is no procedural bar to our consideration of the petition, we then address the petition on its merits.

---

[2]We do not reach an additional argument raised by amici regarding the potential for appointments to the nominating committee to be made in violation of the emoluments clause, N.M. Const. art. IV, § 28. This argument is not relevant to the issues raised in the parties' briefs. *See* Rule 12-320(A) NMRA.

**A. Procedural Issues**

**1. Jurisdiction in mandamus**

{12} Our Constitution grants this Court original jurisdiction in "mandamus against all state officers, boards and commissions" and the power to issue extraordinary writs in the exercise of its jurisdiction. N.M. Const. art. VI, § 3. "This Court on several occasions has recognized that mandamus is an appropriate means to prohibit unlawful or unconstitutional official action." *State ex rel. Clark v. Johnson*, 1995-NMSC-048, ¶ 19, 120 N.M. 562, 904 P.2d 11. We may exercise our jurisdiction in mandamus when a petition

> presents a purely legal issue concerning the non-discretionary duty of a government official that (1) implicates fundamental constitutional questions of great public importance, (2) can be answered on the basis of virtually undisputed facts, and (3) calls for an expeditious resolution that cannot be obtained through other channels such as a direct appeal.

*State ex rel. Sandel v. N.M. Pub. Util. Comm'n*, 1999-NMSC-019, ¶ 11, 127 N.M. 272, 980 P.2d 55. "Although relief by mandamus is most often applied to compel the performance of an affirmative act by another where the duty to perform the act is clearly enjoined by law, the writ may also be used in appropriate circumstances in a prohibitory manner to prohibit unconstitutional action." *State ex rel. Sugg v. Toulouse Oliver*, 2020-NMSC-002, ¶ 7, 456 P.3d 1065 (internal quotation marks and citations omitted).

{13} Petitioners' objective is to excise Amendment 1 from the Constitution; to that end, they seek a declaration that the amendment is null and void and its ratification is a nullity for failure to comply with Article XIX, Section 1. The petition thus satisfies all three prerequisites for the exercise of our mandamus jurisdiction: (1) it presents a fundamental constitutional question of great public importance, (2) that may be answered on the basis of virtually undisputed facts, and (3) which, given the timing of the petition, demands a swift resolution. *See Sandel*, 1999-NMSC-019, ¶ 11.

{14} The Advisory Committee, however, questions whether an exercise of our mandamus jurisdiction is appropriate, arguing that Petitioners have not shown that the committee possesses a clear, existing, and nondiscretionary duty to advise and approve removal of Amendment 1 if the amendment was indeed improperly ratified. We also question whether the Advisory Committee would be able to afford Petitioners meaningful relief. Petitioners' sole citation for the existence of such a duty is *State ex rel. League of Women Voters v. Advisory Comm. to the N.M. Compilation Comm'n*, 2017-NMSC-025, ¶¶ 17-18, 401 P.3d 734 (*LOWV*). But *LOWV* does not support the duty Petitioners urge in this case. In *LOWV,* we recognized the Advisory Committee's nondiscretionary duty to advise and approve the *compilation* of duly ratified constitutional amendments. *Id.* ¶ 18. However, this

8

duty is clearly distinguishable from a duty to advise and approve the *removal* of a constitutional amendment that is compiled but later determined to have been unduly ratified. *See id.* ¶.

{15} Nevertheless, we need not resolve this question. We do not doubt this Court's power to order that an improperly ratified amendment is a nullity. *See State ex rel. Clark v. State Canvassing Bd.*, 1995-NMSC-001, ¶¶ 1, 28, 119 N.M. 12, 888 P.2d 458 (issuing a writ of mandamus to the State Canvassing Board, directing the board to "treat the purported ratification" of an amendment found in violation of Article XIX, Section 1 "as a nullity"). Further, although Petitioners may have failed to identify the governmental entity with the duty to implement our ruling, this Court is not precluded from granting necessary relief. Our rules recognize that "[i]f the petitioner is entitled to a writ or relief other than that requested in the petition, the petition shall not be denied, and the Court shall grant the writ or relief to which the petitioner is entitled." Rule 12-504(C)(4) NMRA. Thus, this Court has, in the past, added a party to a mandamus proceeding "for the purpose of implementing our ruling." *State ex rel. Cisneros v. Martinez*, 2015-NMSC-001, ¶ 6 & n.1, 340 P.3d 597 (joining the Secretary of the Department of Finance and Administration as a party to implement the Court's order).

9

{16}   We note that the Governor has already intervened and zealously participated in these proceedings. Amendment 1 tasks the Governor with appointing the three new members of the PRC. If this Court deemed it necessary, the Court could issue a writ to the Governor prohibiting those appointments. *Sugg*, 2020-NMSC-002, ¶ 7. In light of the Governor's active defense of Amendment 1, we see no reason to delay consideration of the petition.

**2.    Timeliness of the petition**

{17}   The Advisory Committee and the Governor argue that the petition is untimely, because it is barred by the thirty-day limitations period of the Election Code, NMSA 1978, § 1-14-3 (1971), or by the equitable doctrine of laches. We hold that the petition is timely.

**a.    The Election Code**

{18}   According to NMSA 1978, Sections 1-16-1 and -2(A)(1) (2019), the election of any ballot question involving a legislatively-proposed constitutional amendment "shall be called, conducted and canvassed in accordance with the Election Code." Section 1-14-3 provides that "[a]ny action to contest an election . . . shall be filed no later than thirty days from issuance of the certificate of nomination or issuance of the certificate of election to the successful candidate." We have explained that challenges to "the whole process or any part" of an election, or claims which "seek

10

to alter the certified result of the election," are to be construed as election contests subject to the procedures of the Election Code. *Dinwiddie v. Bd. of Cnty. Comm'rs*, 1985-NMSC-099, ¶ 7, 103 N.M. 442, 708 P.2d 1043. This procedural exclusivity "accords with the need for speedy resolution of election contests; contestants are not permitted to proceed under the rules of civil procedure because the procedure set forth in those rules takes too much time." *Gunaji v. Macias*, 2001-NMSC-028, ¶ 26, 130 N.M. 734, 31 P.3d 1008.

{19} The Advisory Committee argues that Petitioners challenge only the procedures used in presenting Amendment 1 to the electorate and reasons that the petition therefore presents an untimely election contest barred by the limitations of the Election Code. We disagree with this characterization of this petition. "A legal challenge to governmental action is not converted into an election contest simply because the action at issue followed an election." *Glaser v. LeBus*, 2012-NMSC-012, ¶ 11, 276 P.3d 959. Petitioners do not challenge the processes used in calling, conducting, or canvassing the 2020 general election or seek to alter the certified result. Rather, Petitioners challenge only whether Amendment 1 satisfies the requirements for voter ratification of a constitutional amendment under Article XIX, Section 1. We cannot fairly characterize Petitioners' challenge to Amendment 1 as an election contest. *See LOWV*, 2017-NMSC-025, ¶ 14 (explaining that a petition

11

for a writ of mandamus which does not seek to alter the certified results of any election, but "clarity about the meaning and effect of the uncontested certified results of the elections" does not present an election contest under Section 1-14-3).

{20} In addition, Section 1-14-3 may not apply to a writ of mandamus proceeding brought to this Court in its original jurisdiction under Article VI, Section 3 of the New Mexico Constitution. Pursuant to our jurisdiction and power of superintending control, "this Court possesses unquestioned power to make rules touching pleading, practice and procedure." *State v. Arnold*, 1947-NMSC-043, ¶ 7, 51 N.M. 311, 183 P.2d 845; *see also id.* ¶ 11 (concluding that rules affecting the time and manner of taking an appeal "are procedural and within this [C]ourt's rule making power"). "Since the Constitution provides for separate and equal branches of government in New Mexico, any legislative measure which affects pleading, practice or procedure in relation to a power expressly vested by the Constitution in the judiciary, such as quo warranto [or mandamus], cannot be deemed binding." *State ex rel. Anaya v. McBride*, 1975-NMSC-032, ¶ 16, 88 N.M. 244, 539 P.2d 1006. Our original jurisdiction and power in mandamus is not subject to a thirty-day limit. *See* Rule 12-504 (governing petitions for extraordinary writs).

{21} We will not construe this petition for writ of mandamus challenging the ratification of a constitutional amendment as an election contest subject to the thirty-

day limitations of the Election Code. Thus, we reaffirm that "the issue of whether logrolling or joinder of multiple amendments indeed has taken place is . . . a justiciable constitutional question, notwithstanding the absence of any challenge to the constitutionality until after the voters have approved the amendment." *State ex rel. Chavez v. Vigil-Giron*, 1988-NMSC-103, ¶ 7, 108 N.M. 45, 766 P.2d 305.

**b.    Laches**

{22}    The Governor additionally argues that the petition is barred by laches. Laches is an equitable defense that prevents "litigation of a stale claim where the claim should have been brought at an earlier time and the delay has worked to the prejudice of the party resisting the claim." *Garcia v. Garcia*, 1991-NMSC-023, ¶ 30, 111 N.M. 581, 808 P.2d 31. We agree that the doctrine of laches may, in appropriate circumstances, bar a challenge made under Article XIX, Section 1. *See, e.g.*, *Miller v. Burk*, 188 P.3d 1112, 1125 (Nev. 2008) (applying laches to a challenge to the clarity of an amendment's ballot brought twelve years after an election).

{23}    "However, laches is not favored and should be applied only where a party has been guilty of inexcusable neglect in enforcing [the party's] rights." *State ex rel. Dep't of Hum. Servs. v. Davis*, 1982-NMSC-139, ¶ 4, 99 N.M. 138, 654 P.2d 1038. Moreover, we hesitate to apply laches to bar a challenge to the ratification of a constitutional amendment. "Caution in the application of laches to bar a

13

constitutional claim is invoked . . . because it would be the epitome of inequity to allow an unconstitutional law to remain in effect merely because someone slumbered on his or her rights." 27A Am. Jur. 2d *Equity* § 119 (2019).

{24}     We also see no reason to apply laches to the current petition. When Petitioners filed the petition, the PRC's nominating committee was preparing a list of nominees for submission to the Governor, but the major changes worked by Amendment 1 were yet to take effect. Although Petitioners have not articulated a reason for the nearly two-year delay in bringing this petition, the Governor also has not identified any real prejudice caused by the delay. "[T]he party asserting the defense [of laches] must demonstrate prejudice, and for such purposes, prejudice cannot be inferred merely from the passage of time." *Brown v. Taylor*, 1995-NMSC-050, ¶ 12, 120 N.M. 302, 901 P.2d 720 (internal quotation marks and citation omitted). Accordingly, we reject the Governor's laches defense and proceed to consider the merits of the petition.

**B.     The Single-Measure Rule or Logrolling**

{25}     The substantive issue at the heart of this case is whether the Legislature violated the single-measure rule contained in Article XIX, Section 1. Petitioners claim that Amendment 1 included at least seven independent measures. Petitioners particularly question the rationality of joining a measure that changed Commission

14

members from elected to appointed officials with the other measures that, for example, reduced the number of Commission members or narrowed the PRC's area of constitutional responsibility.

{26} Article XIX, Section 1 is designed "to prevent 'logrolling,' a legislative practice of joining together two or more independent measures so those who support any one measure will feel obliged to vote for the others in order to secure passage of the measure they favor." *Chavez*, 1988-NMSC-103, ¶ 6. "[T]he particular vice in logrolling . . . lies in the fact that such is inducive of fraud, and that it becomes uncertain whether either two or more propositions could have been carried by vote had they been submitted singly." *City of Raton v. Sproule*, 1967-NMSC-141, ¶ 17, 78 N.M. 138, 429 P.2d 336 (internal quotation marks and citation omitted). The single-measure rule of Article XIX, Section 1 thus guards against the evils of logrolling, "ensur[ing] that the voters are provided with the means to fully and accurately express their will on each and every issue that is presented to them as guaranteed by the New Mexico Constitution." *State Canvassing Bd.*, 1995-NMSC-001, ¶ 27.

{27} Our Court has articulated a rational basis standard for assessing whether an amendment is single or multiple, as "[t]he separation of powers doctrine . . . dictates that strong deference should be shown to the legislature." *Chavez*, 1988-NMSC-103,

¶¶ 7, 12. Under this standard, "a constitutional amendment, which embraces several subjects or items of change, will be upheld as valid, and may be submitted to the electorate as one general proposition, if all the subjects or items of change contained in the amendment are germane to one general object or purpose." *Sproule*, 1967-NMSC-141, ¶ 19.

{28}    In *Sproule*, we warned of the "tendency to rephrase, or to enlarge upon the language of the rule, in order to demonstrate that the result reached under the particular facts of the case is consistent with a logical and correct application of the rule to those facts." *Id.* ¶ 20. The effects of this tendency are evident in the parties' arguments, as each of the parties emphasizes a different rephrasing of our standard to support their respective positions. Petitioners, for example, emphasize language in *State Canvassing Board* suggesting that the various changes in a measure must share a "rational linchpin of interdependence" or be part of "an interlocking package necessary to effectuate" the desired reform. 1995-NMSC-001, ¶ 16. The Governor, on the other hand, emphasizes language in *Chavez* suggesting that the various changes need only be "germane to an overarching theme" and joined by a "rational linchpin." 1988-NMSC-103, ¶ 14. While we find such rephrasing illustrative of our standard, we nevertheless reaffirm that the standard remains one of a rational basis,

16

requiring only that "the subjects or items of change contained in the amendment [be] germane to one general object or purpose." *Sproule*, 1967-NMSC-141, ¶ 19.

{29} We will not invalidate an amendment under the single-measure rule simply because of "[t]he fact that two points of change are involved, the fact that either might have been presented to the electorate separately, [or] the fact that there may be reasons why an elector might have desired one change, and not the other." *Id.* ¶ 21. "Rather, the question to be answered is whether the legislature reasonably could have determined that a proposed amendment embraces but one object." *Chavez*, 1988-NMSC-103, ¶ 9. This is because, "as the branch of government empowered to initiate constitutional amendments, the legislature should be afforded substantial deference to determine both the overall object of a proposed amendment and the

changes incidental to and necessarily connected with the object intended."[3] *Id.* ¶ 6 (internal quotation marks and citation omitted).

{30} Our analysis of whether an amendment embraces multiple measures is highly fact-dependent. *State Canvassing Bd.*, 1995-NMSC-001, ¶ 12. For example, in *Sproule*, this Court held that changes made by an amendment "in regard to special elections and the provisions enlarging the number of voters at both regular and special elections" were properly submitted in a single ballot because the changes were germane to "elections for the purpose of incurring municipal indebtedness." 1967-NMSC-141, ¶ 22 (emphasis omitted). Similarly, in *Chavez,* we held that an amendment making sweeping changes to "the qualifications and merit selection of judges, their numbers, their districting, and the selection of their chief administrative

---

[3]Petitioners urge this Court to apply a "heightened scrutiny" to Amendment 1 because the amendment removed the right of voters to elect Commission members. Petitioners do not supply authority for that heightened scrutiny, however, and we similarly have found no support for applying a more restrictive standard. Application of such heightened scrutiny also would be contrary to the rational basis review applied by this Court in *Sproule* and *Chavez*, as both of these opinions involved amendments affecting the rights of voters. *See Chavez*, 1988-NMSC-103, ¶ 5 (explaining that the amendment established "a method other than by partisan election to select and retain" judicial officers); *Sproule*, 1967-NMSC-141 ¶¶ 15, 22 (describing the amendment's effects on the right to vote in elections to incur municipal indebtedness).

officers" was a single measure because those various changes were all germane to the object or purpose of judicial reform. 1988-NMSC-103, ¶ 14.

{31} In contrast, we held an amendment void for violating the single-measure rule in *State Canvassing Board*, 1995-NMSC-001, ¶¶ 24, 28. The amendment in *State Canvassing Board* joined a popular measure reaffirming an existing public right to conduct a state lottery with a controversial measure creating a private right to wager on slot machines and other video games of chance. *Id.* ¶¶ 17-23. Even though both measures were relevant to the overarching theme of gambling, the distinctions between "the rights created, the means of implementation, and the subject matter" of a public lottery and private gambling revealed that the two measures were not rationally joined. *Id.* ¶ 24. Additionally, the *State Canvassing Board* Court noted that the ballot measure submitting the amendment was misleading, as the language "serve[d] to highlight the state lottery aspect of the amendment while downplaying the fact that the amendment create[d] a private right to wager on video games of chance." *Id.* ¶ 26. Thus, Justice Ransom emphasized in his specially concurring opinion that in the discharge of the Court's constitutional duties "we must believe that neither the legislature nor the people in fact thought a mere advisory vote in support of a state-operated lottery should be dependent upon the grant of a private constitutional right to video gaming." *Id.* ¶ 30 (Ransom, J., specially concurring).

19

Under the circumstances, we held that the two changes were not germane to a single object or purpose and should have been submitted to the electorate in separate ballot questions. *Id.* ¶ 24.

{32}   In the present case, we determine that the several changes made by Amendment 1 are all germane to one general object or purpose. We are struck by the many similarities between the amendment at issue in *Chavez* and the amendment at issue here. Amendment 1 and the *Chavez* amendment both made multiple changes to the selection, retention, and qualifications of public officials and both amendments limited the rights of voters to select the officials in question. *See Chavez*, 1988-NMSC-103, ¶ 5 (listing the changes made by the *Chavez* amendment as including "a method other than by partisan election to select and retain" judges, additional professional requirements for members of the judiciary, and an increase in the number of judges and judicial districts). While Amendment 1 also narrows the PRC's area of constitutional responsibility, we view this additional change as still germane to the Legislature's object or purpose of reforming the PRC.

{33}   Of course, we acknowledge that each of the several changes proposed by Amendment 1 could have been submitted separately to the voters. We also acknowledge that some voters may have preferred one change and opposed another. We express no opinion on the merits or wisdom of the changes made by Amendment

20

1. *See State Canvassing Bd.*, 1995-NMSC-001, ¶ 27 (suggesting that, in considering whether an amendment violates Article XIX, Section 1, a court should not reach "any decision regarding the legality or desirability of" an amendment). We conclude only that the Legislature's choice to join the various changes together in a single-ballot measure was not irrational. "[I]t comports better with the doctrine of separation of powers to decide what rationally may be joined rather than what rationally may be separated." *Chavez,* 1988-NMSC-103, ¶ 11.

{34}     We also do not see any of "the problems inherent in the vice of logrolling" in Amendment 1 that motivated our Court in *State Canvassing Board*, 1995-NMSC-001, ¶¶ 24, 26, to invalidate the multiple measures at issue in that case. The *State Canvassing Board* Court concluded that the amendment there "logrolled . . . two independent objects by piggybacking the passage of one on the popularity of the other." *Id.* ¶ 26. In contrast, Amendment 1 does not surreptitiously ride a controversial measure on the back of a popular one. The entirety of Amendment 1 was widely debated before the election, and all of the chief effects of the amendment—including and especially the transition to appointed Commission members and the reduction of the PRC's responsibilities—were well known to the public. *See* 2020 Voter Guide at 6-16 (explaining the effects of, as well as the arguments for and against, Amendment 1); N.M. Legis. Council Serv., *Summary of*

21

*Arguments for and Against the Constitutional Amendments Proposed by the Legislature in 2019 and 2020* at 3-10 (July 2020), https://www.nmlegis.gov/Publications/New_Mexico_State_Government/Constitutional_Amendment/Constitutional_Amendments_2020.pdf (same) (last visited March 22, 2023). We note that the many changes made to the judiciary in the amendment challenged in *Chavez* were subject to similar widespread and open debate. 1988-NMSC-103, ¶ 3. Further, and as discussed more fully below, we believe that the title of Amendment 1 sufficiently communicated the purpose of the amendment and was not misleading, so there is little chance that the voters were "lured . . . into casting their votes" in favor of Amendment 1 based solely on the popularity of a separate measure. *State Canvassing Bd.*, 1995-NMSC-001, ¶ 26.

{35}    We therefore hold that Amendment 1 does not violate the single-measure rule in Article XIX, Section 1 of the New Mexico Constitution.

**C.    The Ballot Title**

{36}    Petitioners also challenge Amendment 1 based on its ballot title. Arguing that Article XIX, Section 1 embraces an implicit requirement of ballot accuracy, Petitioners assert that Amendment 1's title misled voters because it did not specify that Commission members would no longer be elected, detail various aspects of the PRC's membership that were changing, or list the PRC's previous area of

22

responsibility. The Governor "does not dispute that New Mexico law supports some sort of implicit accuracy requirement," but argues that the title does not need to "educate the voters on every detail and necessary consequence of ratifying the proposed amendment."

{37}    New Mexico appellate courts have not recognized a separately enforceable requirement of ballot title accuracy under Article XIX, Section 1. This Court in *State Canvassing Board* agreed "that a ballot title should be intelligible, and impartial . . . and 'be free from any misleading tendency whether of amplification, of omission, or of fallacy.'" 1995-NMSC-001, ¶ 25 (quoting *Plugge v. McCuen*, 841 S.W.2d 139, 140 (Ark. 1992), *overruled on other grounds by Bailey v. McCuen*, 884 S.W.2d 938, 942 (Ark. 1994)). However, the *State Canvassing Board* Court spoke of this requirement only in the context of its holding on the single-measure rule, explaining that "the title of the amendment, while technically proper, exacerbated the problems inherent in the vice of logrolling." 1995-NMSC-001, ¶ 26. Petitioners have not given us sufficient reasons for departing from that approach. Thus, we consider only whether Amendment 1's ballot language was misleading insofar as it is pertinent to our ruling on Petitioners' logrolling claim.

{38}    In submitting an amendment to electors for ratification, voters must be provided with such information about the amendment as to allow the voters "to make

23

an intelligent choice, fully aware of the consequences of their vote." 16 Am. Jur. 2d *Const. Law* § 38 (2009); *see also Bailey*, 884 S.W.2d at 942 ("[A] ballot title must be intelligible, honest, and impartial so that it informs the voters with such clarity that they can cast their ballots with a fair understanding of the issues presented."); *Kahalekai v. Doi*, 590 P.2d 543, 552-53 (Haw. 1979) (requiring a ballot to be in "such form and language as not to deceive or mislead the public"); *Dacus v. Parker*, 466 S.W.3d 820, 825-26 (Tex. 2015) ("[T]he ballot must identify the measure by its chief features, showing its character and purpose." (emphasis omitted)). A ballot title submitting a constitutional amendment to the electorate thus "cannot either 'fly under false colors' or 'hide the ball' as to the amendment's true effect." *Armstrong v. Harris*, 773 So. 2d 7, 16 (Fla. 2000). However, in due deference to the principle of separation of powers, we agree that "the form and manner of submitting the question of a constitutional amendment to the people [is to be] left to the judgment and discretion of the legislature," which judgment must not be overturned except when the ballot title is "so unreasonable and misleading as to be a palpable evasion of the constitutional requirement to submit the law to a popular vote." *Breza v. Kiffmeyer*, 723 N.W.2d 633, 636 (Minn. 2006) (internal quotation marks and citation omitted).

{39} In view of this deferential standard, we conclude that Amendment 1's title did not mislead voters so as to "exacerbate[] the problems inherent in the vice of logrolling." *State Canvassing Bd.*, 1995-NMSC-001, ¶ 26. In *State Canvassing Board*, we explained that the wording "'and certain games of chance'" in that amendment's title misled voters because the wording "does not alert the voter as to the nature or scope of the second prong of the amendment regarding video gaming." *Id.* In contrast, the title of Amendment 1 alerts voters as to the nature and scope of the proposed changes to Article XI, Sections 1 and 2. Amendment 1's title specifies that the amendment provides for a PRC that will "consist of three members appointed by the Governor." 2020 Voter Guide at 6. The title also indicates that the PRC will have responsibility over "public utilities" and other public service companies that it "may be required to regulate." *Id.* The title thus informs voters as to the two main changes made by Amendment 1, both of which are germane to the central purpose of reforming the PRC.

{40} As Petitioners note, this language does not explicitly state that Commission members were previously elected. The title also does not identify other implications of the amendment, such as the fact that Commission members may not reside in different state districts. The title also does not list the PRC's previous areas of constitutionally assigned responsibilities. But the Legislature's decision to omit

25

these details is not unreasonable and does not render the ballot title misleading. Rather, the title accurately characterizes the chief purpose and effects of Amendment 1. We deem this sufficient under the circumstances.

{41} As in *Chavez*, we emphasize,

> It is incumbent upon members of the public to educate and familiarize themselves with the contents and effect of proposed amendments before expressing themselves at the polls. This is a non-delegable responsibility which is magnified, rather than diminished, by the complexity of amendments presented to them. Where information placed before the electorate is neither deceptive nor misleading, and they are given sufficient time within which to familiarize themselves with the contents and effect of proposed amendments, they will be deemed to have cast informed ballots.

1988-NMSC-103, ¶ 10 (text only)[4] (quoting *Kahalekai*, 590 P.2d at 553). The electorate was given ample time to consider the changes proposed by Amendment 1. The electorate was also provided with accurate information about Amendment 1's potential effects in other official supplementary materials, such as the Secretary of State's 2020 Voter Guide. *See* 2020 Voter Guide at 6-16; *see also* N.M. Const. art. XIX, § 1 (requiring the Secretary of State to "provide notice of the content and purpose of legislatively approved constitutional amendments . . . to inform electors

---

[4]The "text only" parenthetical as used herein indicates the omission of all of the following—internal quotation marks, ellipses, and brackets—that are present in the quoted source, leaving the quoted text itself otherwise unchanged.

about the amendments in the time and manner provided by law"). Finally, Petitioners have not presented any evidence suggesting that voters were misled about the nature or scope of Amendment 1. *See Miller*, 188 P.3d at 1124-25 (noting that the challengers to an amendment had not provided any evidence of voter misunderstanding, "[o]ther than pointing to the ballot question's language and posing hypotheticals"). Thus, Petitioners give us no reason to doubt that the electorate cast informed votes.

{42} Accordingly, we defer to the Legislature's judgment and discretion in fixing the title of Amendment 1. This conclusion supports our holding that the amendment embraced a single measure under Article XIX, Section 1.

## IV. CONCLUSION

{43} Petitioners have not shown that the 2020 ballot measure proposing to amend the constitutional provisions governing the PRC violated the logrolling prohibition in Article XIX, Section 1. In accord with our prior order, we therefore deny the petition for writ of mandamus.

{44} **IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Justice**

**WE CONCUR:**

**C. SHANNON BACON, Chief Justice**

**DAVID K. THOMSON, Justice**

**JULIE J. VARGAS, Justice**

**BRIANA H. ZAMORA, Justice**

28